UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WANDA Y. SHOWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-CV-238-HBG |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 23]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Wanda Y. Shown ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On May 30, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began April 1, 2012. [Tr. 168]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 118]. On April 16, 2014, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 32-81]. On July 24, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 10-27]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 5, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I.   **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial activity since April 1, 2012, the alleged onset date (20 CFR 404.1571 (*et seq*.).
>
> 3. The claimant has the following severe impairments: osteoarthritis, depression and anxiety (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can frequently perform all postural activities. She can understand, remember and carry out both simple and detailed, but not multi-step detailed tasks. She can adapt to gradual changes in the work setting. She can maintain concentration and persistence for those tasks. She can respond appropriately to supervision and coworkers in usual work situations, but would do better with only occasional interaction with the general public.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on October 12, 1956 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2012, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 15-25].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial

4

evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ committed two assignments of error.[1] First, the Plaintiff contends that the ALJ erred when he rejected the opinions of consultative examiner Jeffery Summers, M.D., who found the Plaintiff capable of only performing light work. [Doc. 16 at 2-3]. The Plaintiff maintains that Dr. Summers' opinion is supported by the medical evidence, as well as the Plaintiff's subjective allegations, and is not inconsistent with other opinion evidence of record. [Id. at 3-12]. Second, in regard to the ALJ's credibility determination, the Plaintiff asserts that the ALJ failed to properly address the Plaintiff's strong work history, a factor the Plaintiff argues lends to her credibility. [Id. at 13].

The Commissioner responds that the ALJ properly considered the medical evidence of record, including objective findings, subjective complaints of pain, performance of daily living activities, opinion evidence, and pain management through medication, all of which support the ALJ's conclusion that the Plaintiff could perform medium work. [Doc. 19 at 4-6]. With specific regard to the evaluation of Dr. Summers' opinion, the Commissioner maintains that the ALJ properly found the opinion unsupported by other substantial evidence in the record, including

---

[1] The Court notes that the Plaintiff makes a brief reference to the vocational expert testimony in this case as being undeveloped in regard to transferability of jobs skills as a result of the Plaintiff's mental limitations and suggests "that at a bare minimum this case should be remanded to address this issue and determine which grid rule applies in Plaintiff's case." [Doc. 16 at 3]. Later in the Plaintiff's brief, the Plaintiff appears to attempt to develop the argument but the text is cut-off either by accident or error. [See id. at 12]. Without further explanation or support offered by the Plaintiff, the Court finds that whatever issue the Plaintiff was possibly attempting to litigate is undeveloped for judicial review. See McPherson v. Kelly, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

6

other opinion evidence and Dr. Summers' own examination findings. [Id. at 7-11]. Additionally, the Commissioner rejects the notion that the ALJ was required to comment on the Plaintiff's work history for her credibility determination to stand. [Id. at 6]. The Commissioner maintains that the ALJ's decision need only cite specific reasons, not every possible factor, for her credibility finding and that in this case, the factors discussed outweigh any effect the Plaintiff's work history may have had. [Id. at 6].

The Plaintiff filed a reply, calling the Court's attention to "factually inaccurate and/or legally insufficient" arguments cited by the Commissioner, including the Plaintiff's ability to ambulate normally, perform daily living activities, and control pain by mediation. [Doc. 22 at 1-3]. In addition, the Plaintiff submits that the Commissioner's position that the ALJ's consideration of other credibility factors outweighs the effect of the Plaintiff's work history impermissibly invites the Court to affirm the ALJ's decision on a basis not contained within the decision itself. [Id. at 3-4].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Dr. Summers' Opinion

Dr. Summers performed a consultative examination on July 12, 2012, at which time the Plaintiff reported problems with her joints, including stiffness and aching pain, following a workplace injury to her back in 2010. [Tr. 266]. The Plaintiff complained of back pain that radiated into her right lower extremity, as well as stiffness and dull aching pain in both her hands and knees. [Id.]. The Plaintiff related that certain activities, such as bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 pounds, intensified her back

7

and knee pain. [Id.]. She further explained that her hand pain increased with repetitive grasping, fingering, feeling, or manipulating objects. [Id.]. The Plaintiff cited modest improvement with medication and stated that her family physician had diagnosed her with arthritis and degenerative disc disease. [Id.].

Upon examination, Dr. Summers determined that the Plaintiff suffered from osteoarthritis, noting she had moderate kyphoscoliosis deformity of the spine, decrease range of motion in her lumbar spine, and mild degenerative changes in both hands. [Tr. 268]. However, Dr. Summers observed that the Plaintiff had full range of motion in all other joint areas, 5/5 grip strength, and intact manual dexterity and fingering abilities. [Tr. 268]. Additionally, Dr. Summers remarked that the Plaintiff could ambulate in a normal manner, she did not require the use of a walking device, she could stand and walk on her heels and toes, she could perform a full squat, and she could stand on either leg singly. [Id.].

Based upon the examination findings and the Plaintiff's report, Dr. Summers opined that the Plaintiff would have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 pounds. [Tr. 269]. Moreover, she would have difficulty grasping, fingering, feeling, and manipulating objects with her hands on a repetitive basis. [Id.]. Despite these hand limitations, Dr. Summers concluded that the Plaintiff maintained gross functional use of her hands, such that she could perform retail work, security work, or childcare for eight hours in a single workday. [Id.].

In the disability determination, the ALJ noted that the Plaintiff's reported symptoms – back pain radiating into her right lower extremity and stiffness and aching pain in both hands that worsened with repetitive grasping, fingering, feeling, and manipulating objects – were symptoms unreported to any of the Plaintiff's treatment providers. [Tr. 20]. Determining that Dr.

8

Summers' examination findings "were relatively benign" [Id.], the ALJ assigned the opinion "little weight" because "there is no radiological evidence of a back problem, except for the note by the claimant's pain management provider indicating that an MRI study performed in 2011 showed only degenerative changes in the thoracic spine, but no compression on the thoracic cord, no canal or neuroforaminal narrowing, and no fracture" [Tr. 22]. The ALJ also noted there was no objective evidence demonstrating that the Plaintiff had any problems using her hands prior to reporting such to Dr. Summers, and that Dr. Summers' own examination findings, including notation of full grip strength, were inconsistent with the limitations he assessed. [Id.].

The Plaintiff argues that the ALJ failed "to provide any reasonable rationale for rejecting the assessment" offered by Dr. Summers. [Doc. 16 at 2]. The Plaintiff recites her medical history as evidence consistent with Dr. Summers' opinion. [Id. at 5-9]. The Court finds, however, that the Plaintiff's arguments amount to a disagreement with the conclusions reached by the ALJ, rather than a failure to adhere to agency procedures or a lack of substantial evidence supporting the ALJ's decision. ALJs are "tasked with interpreting medical opinions in light of the totality of the evidence," Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 564 (6th Cir. 2014), which is precisely what the ALJ did here.

For example, the Plaintiff states that she received pain management through Active Pain Treatment beginning in May 2012 for thoracic pain and spondylosis, and that despite the use of various prescription pain medications, her pain was frequently reported as a seven on a 10-point scale of severity. [Id. at 7]. In addition, the Plaintiff cites unwanted side effects, such as constipation and sleepiness, caused by her mediation. [Id.]. The Court observes that while the Plaintiff consistently reported pain between a five and eight with medication [Tr. 335-40], the ALJ recognized this fact but found it to be undermined by the Plaintiff's testimony that her pain

9

level was only a three or four [Tr. 20].[2] The Court also notes that despite allegations of side effects, the Plaintiff often reported no side effects to her pain management provider. [Tr. 337-39]. On only one occasion did the Plaintiff report sleepiness as a side effect. [Tr. 340]. This certainly detracts from the Plaintiff's testimony that her pain medication made her spacy and confused [Tr. 50] – an allegation never reported to any medical provider of record.

The Plaintiff also argues that while she reported to her pain management provider that she could perform activities of daily living, she also reported that they become more difficult over time. [Doc. 16 at 7]. Specifically, the Plaintiff cites treatment records in which she complained over the course of treatment that standing to wash dishes was "bothersome," bending increased her pain, that her back pain flares up when "she is doing things," and that she has to lie down after completing household chores. [Id. (citing Tr. 337, 339)]. As noted by the ALJ [Tr. 20, 22], however, the Plaintiff also reported on numerous occasions throughout treatment that her medication allowed her to complete activities of daily living without difficulty or assistance [Tr. 337-39].

While it is true that the Plaintiff reported during one of her appointments that she had difficulty bending over and standing to wash dishes, she also reported during that same visit that her medication was a "great help for her day to day life" and that she was able to complete activities of daily living "without too much difficulty or assistance." [Tr. 337]. The ALJ further observed that the Plaintiff reported to a consultative psychological examiner that she was able to dust, do laundry, clean the bathrooms, make her bed, make quick meals, and clean the kitchen

---

[2] The Commissioner likewise points to the Plaintiff's testimony rating her pain as a three or four as evidence that her pain was controlled by medication. [Doc. 19 at 5]. The Plaintiff asserts in her reply that nowhere in the hearing transcript is such a statement made. [Doc. 22 at 3]. The Court has thoroughly reviewed the hearing transcript and notes that in response to the ALJ's questioning, the Plaintiff stated that her pain "stay[s] at an even level of say three to four, with the pain medications" but that her medication does not eliminate her back pain entirely. [Tr. 56].

independently. [Tr. 22, 272]. The Plaintiff draws the Court's attention to a February 2014 treatment note that "indicated that her functional impairment is moderate, and that when present, the pain interferes with some activities of daily living" [Doc. 16 at 7]. The treatment note also provides, however, that the Plaintiff had not taken her medication for almost a week. [Tr. 340].

Relying on two Function Reports [Tr. 195-203, 212-19], the Plaintiff also submits that her allegations of severe upper back pain, which she contends affect her neck and shoulder blades and is exacerbated by standing or sitting longer than 45 minutes, is not contradicted by the medical evidence of record. [Doc. 16 at 7-8]. Contrary to the Plaintiff's argument, the ALJ observed [Tr. 20] that on several occasions between April 2012 and December 2013, the Plaintiff denied having any back or neck pain when she was seen by Cherokee Health System, the Plaintiff's primary care provider. [Tr. 280, 282-83, 290, 296]. The Court is cognizant that these same records also document complaints of back pain during other office visits. The point being, however, is that the record indeed contains medical evidence that reasonably calls into question the severity and consistency of the Plaintiff's pain and alleged limitations.

Moreover, the Court notes that the record contains an opinion from a non-examining state agency physician who, after reviewing the whole record, including Dr. Summers' assessment, opined less restrictive findings. [Tr. 22-23, 89-90]. The ALJ assigned the opinion "great weight" because the opinion was consistent with treatment notes and examination findings. [Tr. 23]. While the Plaintiff suggests in her brief [Doc. 16 at 9] that the ALJ ignored the expertise of Dr. Summers who, as a state agency consultative examiner, is an "expert" in the evaluation of disability, the Court observes that non-examining state agency physicians are likewise "experts" in social security law. See 20 C.F.R. § 404.1527(e) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly

11

qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.").

In sum, the purpose of the Court's discussion is to demonstrate that while the record undoubtedly contains substantial evidence supporting Dr. Summers' more restrictive opinion, the record also contains substantial evidence supporting the ALJ's conclusion that the Plaintiff is not as limited as alleged. The ALJ recognized that the Plaintiff reported severe pain with medication and difficulty performing daily living activities, but cited appropriate and supported reasons for discounting the challenged evidence and the Plaintiff's subjective complaints. "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). Therefore, the Court cannot say that the evidence of record unequivocally supports Dr. Summers' opinion as the Plaintiff contends.

The Plaintiff also complains that the ALJ did not provide "good reason" for rejecting Dr. Summers' opinion and alleges other "legally insufficient and factually inaccurate rationales" made by the ALJ. [Doc. 16 at 9-10]. As an initial matter, the Court notes that the "good reason" requirement denoted under the regulation's treating physician rule, 20 C.F.R. § 404.1527(c)(2), only applies to the opinions of treating sources. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007); see Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (holding that one-time examiners are not due any "special degree of deference"). Nonetheless, adjudicators may not ignore the opinions of one-time consultative examiners and must "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining

12

sources who do not work for us." 20 C.F.R. § 404.1527(e)(2)(ii). The factors applicable for assessing a treating physician's opinion when it does not garner controlling weight remain guiding principles for evaluating opinions offered by consultative examiners. Id.

Contesting the rational for the reasons given by the ALJ in rejecting Dr. Summers' opinion, the Plaintiff asserts that the ALJ improperly rejected the Plaintiff's allegations of severe back pain by relying on an MRI study that "only" showed degenerative changes in the thoracic spine. [Doc. 16 at 10]. The Plaintiff argues that the ALJ's approach is contrary to the standard for evaluating subjective complaints of pain as set forth by the Sixth Circuit. [Id.]. In this regard, the Plaintiff argues that there are no objective tests that can measure the level of pain experienced by a claimant and that imaging studies are not the only type of "objective evidence" that may support complaints of pain. In essence, the Plaintiff alleges that the ALJ substituted his opinion for that of Dr. Summers. [Id. at 11-12].

In evaluating the intensity and persistence of a claimant's symptoms, such as pain, ALJs must consider all the evidence in the record, including a claimant's history, signs and laboratory findings, and statements made by the claimant, medical sources, and other people. 20 C.F.R. § 404.1529(c)(1). While objective medical evidence, *i.e.*, "medically acceptable clinical and laboratory diagnostic techniques," may offer insight as to how symptoms affect a claimant's ability to work, the regulations recognize that pain is more subjective, and therefore, may be harder to quantify by objective evidence alone. § 404.1529(c)(2)-(3). Thus, complaints of pain may not be rejected solely because there is a lack of objective medical evidence substantiating a claimant's statements. § 404.1529(c)(2). Instead, ALJs are instructed to consider the following factors in determining whether a claimant's symptoms are of such severity that they can reasonably be expected to produce the alleged disabling pain: (i) daily activities; (ii) the

13

location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. § 404.1529(c)(3).

The Court agrees with the Plaintiff that objective medial evidence consists of more than radiological testing, and that objective medical evidence alone may be insufficient in the evaluation of pain. See § 404.1529(c)(2). However, this does not necessarily make the Plaintiff's 2011 MRI immaterial. The Court observes that the Plaintiff's pain management provider, in reviewing the MRI, noted that the Plaintiff's "pain level seems to be greater" than what the imaging results suggested. [Tr. 339]. This comment would appear to suggest that the Plaintiff's allegations were disproportionate in comparison to what the MRI revealed, making the MRI at least one relevant consideration in weighing the Plaintiff's subjective complaints.

The Plaintiff points out [Doc. 16 at 10] that objective medical evidence also includes "signs," which the regulations define as "anatomical, physiological, or psychological abnormalities which can be observed." 20 C.F.R. § 404.1528(b). The Plaintiff contends that Dr. Summers' examination findings, which he based his opinion on in part, also served as objective evidence that supported the limitations he assessed. But the ALJ explained that Dr. Summers' examination findings, with particular regard to the Plaintiff's hands, conflicted with the limitations he assessed. Specifically, Dr. Summers observed that the Plaintiff had full grip strength and normal manual dexterity and fingering ability, which did not appear to explain how the Plaintiff would have difficulty grasping, fingering, feeling, and manipulating objects. The

14

ALJ also took issue with the Plaintiff's reported complaints of stiffness and aching pain in both hands as the Plaintiff had never complained of these issues before.

Moreover, the ALJ did not merely disagree with Dr. Summers' opinion that the Plaintiff was capable of performing light work due to the objective medical evidence of record. The ALJ also considered a number of the factors enumerated in 20 C.F.R. § 404.1529(c)(3) for evaluating subjective complaints of pain. As previously discussed, the ALJ considered the Plaintiff's reported level of pain with medication by comparing treatment notes with the Plaintiff's hearing testimony. The ALJ considered the Plaintiff's reports of daily living activities and the ability to complete them. The ALJ also observed the lack of complaints made to her primary care provider of back and neck pain on a number of occasions. Additionally, the ALJ noted that although the Plaintiff indicated in her function report that she used a cane, no treatment provider observed the use of an assistive walking device, and Dr. Summers found the Plaintiff ambulated normally.[3] [Tr. 22]. These considerations coincide with the § 404.1529(c)(3) factors suggested by the regulation, including daily activities, location, duration, frequency, and intensity of pain, and the type, dosage, effectiveness, and side effects of any medication.

Based upon the foregoing, the Court finds that the ALJ drew reasonable inferences from the evidence of record, did not reinterpret the findings reached by Dr. Summers, or summarily reject the opinion without sufficient explanation. In conclusion, the Court observes that this is the type of "classic case" in which the evidence of record could support a finding either way. It

---

[3] The Plaintiff argues in her reply [Doc. 22 at 1-2] that this fact, which is relied upon in the Commissioner's brief [Doc. 19 at 4] in support of the ALJ's credibility determination, is legally irrelevant because it does not relate to whether the Plaintiff can stand or walk for extended periods as required by 20 C.F.R. § 404.1567(b), -(c) for a full range of light and medium work. The Court finds that this consideration is indeed relevant because it relates to the primary issue at hand – that is, evaluation of the Plaintiff's subjective allegations of pain. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 242 (6th Cir. 2002) (finding the plaintiff's inconsistent testimony provided a reasonable basis for an adverse credibility finding).

is this very reason that the Social Security Act tasks ALJs, not the courts, with resolving conflicts in the evidence, recognizing that there is a "zone of choice" within which ALJs must be free to make decisions without the court's interference. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (citation omitted). Accordingly, because substantial evidence supports the ALJ's decision, the Court finds the Plaintiff's allegation of error is not well-taken.

### B. Plaintiff's Work History

Finally, in addition to the credibility arguments discussed above, the Plaintiff also asserts that the ALJ erred by failing to consider the Plaintiff's strong work history. [Doc. 16 at 13]. The Plaintiff points out that she worked "82 out of the 96 possible quarters which predated her alleged onset date (20 ½ out of 24 years), the last 68 quarters (17 years) consecutively." [Id.]. The Plaintiff maintains that her strong work history is a factor the ALJ must consider in the overall credibility determination, and that such an impressive work history lends to the Plaintiff's credibility. [Id.].

The Commissioner argues that the Plaintiff's allegation is without merit because agency rules do not require that the ALJ cite to every possible factor in the credibility determination, but only specific reasons, supported by the record, that make clear to a subsequent reviewer the weight assigned and the reasons for that weight. [Doc. 19 at 6 (citing Social Security Ruling 96-7p)].

The Court agrees with the Commissioner. A claimant's work history is only one of the many factors an ALJ may consider in making a credibility determination. See 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your

16

treating or nontreating source, and observations by our employees and other persons."). Further, the Court of Appeals for the Sixth Circuit has explained that an ALJ's credibility determination need not include an item-by-item analysis of all the factors identified in § 404.1529(c)(3). Bowman v. Chater, No. 96–3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (Table); see also Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 507-08 (6th Cir. 2006) ("[A]n ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion.").

The Court agrees that a lengthy and consistent work history may bolster the Plaintiff's credibility. See Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) (recognizing that "a good work history may be deemed probative of credibility"). However, "[e]ven if the Court were to accept Plaintiff's argument, reversal would not be merited because the existence of evidence weighing in favor of Plaintiff's credibility is not, in itself, a basis for the Court to overturn a credibility determination." Barney v. Comm'r of Soc. Sec., No. 1:08-CV-1225, 2010 WL 1027867, at *2 (W.D. Mich. Mar. 18, 2010) (rejecting the plaintiff's argument that the ALJ should have considered his work history in the disability determination). As more thoroughly discussed above, the Court finds that the ALJ cited appropriate reasons supported by substantial evidence for finding the Plaintiff less than fully credible, and therefore, the ALJ did not commit reversible error for failing to explicitly address the Plaintiff's work history in the disability determination.

Accordingly, the Plaintiff's allegation in this regard is without merit.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment [**Doc. 15**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] be **GRANTED.** The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

ENTER:

_____
United States Magistrate Judge